United States District Court
Southern District of Texas
FILED

OCT 26 1995

Michael N. Milby, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION**

JOHN R. FREELAND

vs.

WALZEM SERVICE CORP.,
RANDALL HENDERSON,
O.R./CITY, INC., AND
OUTDOOR RESORTS OF TEXAS, INC.
OUTDOOR RESORTS OF AMERICA, INC.

)
)
)
)
)
)
)
)
)

**CIVIL ACTION NO. M-94-209**

### PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

1.   Comes now Plaintiff, **JOHN R. FREELAND**, and files this as his <u>Plaintiff's First Amended Complaint</u>, complaining of Defendants herein **WALZEM SERVICE CORP., RANDALL HENDERSON, O.R./CITY, INC., OUTDOOR RESORTS OF TEXAS, INC.** and **OUTDOOR RESORTS OF AMERICA, INC.** As grounds for such petition, Plaintiff would show unto this Court as follows:

### PARTIES

2.   Defendant **WALZEM SERVICE CORP.** ("WALZEM") is a corporation doing business in Texas who has already entered an appearance herein. No further service of process is necessary on this defendant.

3.   Defendant **RANDALL HENDERSON** ("HENDERSON") is an individual who has already entered an appearance herein. No further service of process is necessary on this defendant. As the controlling shareholder and as a director of Outdoor Resorts of Texas, Inc. ("ORT"), Defendant **HENDERSON** is personally liable



for all acts or omissions of Defendant **ORT** which occurred after the time that the charter of **ORT** was forfeited.

4. Defendant **O.R./CITY, INC.** ("O.R./CITY") is a "corporation" which continues to do business in the State of Texas even though its charter was forfeited. Defendant **O.R./CITY, INC.** has already entered an appearance herein. No further service of process is necessary on this defendant.

5. Defendant **OUTDOOR RESORTS OF TEXAS, INC.** ("ORT") is a "corporation" which continues to do business in Texas even though its charter was forfeited. Defendant **OUTDOOR RESORTS OF TEXAS, INC.** has already entered an appearance herein. No further service of process is necessary on this defendant.

6. Defendant **OUTDOOR RESORTS OF AMERICA, INC.** ("ORA") is a corporation doing business in Texas who may be served by serving the Secretary of State.

## FACTS

7. Plaintiff and Defendant **WALZEM** jointly executed a Memorandum of Agreement (the "Agreement") which became effective on or about January 27, 1989, whereby **WALZEM** became contractually obligated to make certain payments to Plaintiff in Hidalgo County, Texas. A copy of this Memorandum of Agreement is attached hereto as **Exhibit "1"**. Contemporaneous with the execution of the Memorandum of Agreement, Plaintiff and Defendant **WALZEM** executed a Security Agreement, a copy of which is attached hereto as **Exhibit "2"**.

8. **WALZEM** made a series of payments to **FREELAND** from the date of executing the Agreement up to on or about July 18, 1991. Since July 18, 1991 **WALZEM** has failed and refused to make any further payments to **FREELAND**, resulting in an unpaid principal obligation in the amount of $119,900.00 as of July 18, 1991. The debt has since been reduced by $1,000.00 as a result of applying the proceeds from the foreclosure to the Obligation.

9. The entire amount of the Obligation is currently due and owing by **WALZEM** to **FREELAND** pursuant to paragraph 4(c) of the Agreement, which provides that:

"Notwithstanding, the entire unpaid principal amount of the Obligation will be due and payable upon the sale by Walzem of substantially all of the property described in Exhibit "G", which is attached hereto and made a part hereof for all purposes",

because all of the property referred to in Exhibit "G" of paragraph 4(c) of the Agreement has been sold or conveyed by **WALZEM.**

10. In the alternative, the entire amount of the obligation is currently due and owing by **WALZEM** to **FREELAND** pursuant to paragraph 4(g) of the Agreement, which states:

"If Walzem defaults in the performance of any obligation hereunder or in any instrument securing or collateral to it, and the default continues after Freeland give Walzem fifteen (15) days notice of default directed to Walzem's local mailing address being 900 E. Harrison, Harlingen, Cameron County, Texas 78550, then Freeland may declare the unpaid principal balance on the Obligation immediately due."

Defendant **WALZEM** defaulted on these obligations in that it failed and refused to make any of the required payments after July 18, 1991. **FREELAND** gave **WALZEM** the required notice and declared the unpaid balance immediately due.

11. In spite of the fact that **FREELAND** properly gave notice, declared the balance due and demanded immediate payment, **WALZEM** still failed and refused to pay the balance of the obligation, or any portion thereof, forcing Plaintiff to foreclose on a portion of the collateral as shown by the <u>Notice of Public Sale</u>, a copy of which is attached hereto as **Exhibit "3"**. Defendant **WALZEM** remains liable for the $118,900.00 balance of the Obligation still owing to Plaintiff after full credit is given for the proceeds from the public sale.

12. As a material condition of the Agreement, **WALZEM** gave Plaintiff a security interest in and to the portion of the rental income then owned by **WALZEM** or later acquired by **WALZEM** from Fiesta Harbor, Inc. Prior to or contemporaneous with the execution of the Agreement, **WALZEM** acquired Fiesta Harbor, Inc.'s fifty percent (50%) interest in the rental-pool from Outdoor Resorts on Long Island, Texas.

13. As a result of **WALZEM's** acquisition from Fiesta Harbor, Inc., Plaintiff has held, at all times pertinent to this litigation, a security interest in fifty percent (50%) of the rental-pool from Outdoor Resorts on Long Island, Texas.

14. Subsequent to **WALZEM's** execution of the Agreement, **WALZEM** attempted to make an improper assignment of an interest in this property to Defendant **O.R./CITY, INC.**, who in turn agreed to convey eighty-five (85%) in said rental pool to Defendant **OUTDOOR RESORTS OF TEXAS, INC.**, who in turn attempted to convey all of its interest to Defendant **OUTDOOR RESORTS OF AMERICA, INC.** Defendant **WALZEM** is specifically prohibited from making any such

transfer due to paragraph 5 of <u>Obligor's Covenants</u> of the Security Agreement, which states:

> "Sale. Obligor will not sell, transfer, or encumber any of the collateral without the prior written consent of Secured Party."

15. Despite the fact that Defendants knew that Plaintiff held a security interest in this rental-pool income, Defendants **HENDERSON, O.R./CITY, OUTDOOR RESORTS OF TEXAS, INC.**, and **OUTDOOR RESORTS OF AMERICA, INC**. began to collect and continue to collect the rental-pool income directly from the lot owners at Outdoor Resorts of Long Island, and to keep all of said income, to the exclusion of Plaintiff.

16. Plaintiff would show that while he foreclosed on a portion of the collateral, that the balance of the rental-pool is either still owned by **WALZEM** or was transferred by **WALZEM** subject to Plaintiff's security interest. In either event, **WALZEM** still owes the $118,900.00 balance to Plaintiff and the rental-pool income is still burdened with **FREELAND's** security interest.

## FIRST CAUSE OF ACTION

### <u>BREACH OF CONTRACT</u>

17. Plaintiff incorporates by reference herein the facts as set out in paragraphs 7 through 16, inclusive, hereinabove.

18. Defendant **WALZEM's** failure to make the payments to **FREELAND** when due constitutes a breach of contract, for which **FREELAND** is entitled to and hereby seeks all damages awardable by law, including but not limited to the principle obligation of $118,900.00.

19. **FREELAND** is also entitled to and hereby seeks reasonable attorneys' fees as provided for in paragraph 2 of Obligor's Covenants of the Security Agreement and as also provided for in Art. 38.001 of the Texas Civil Practices and Remedies Code.

20. Plaintiff incorporates by reference herein the facts as set out in paragraphs 7 through 16, inclusive, hereinabove.

### SECOND CAUSE OF ACTION

### CONVERSION

21. On or about June 15, 1992, Plaintiff, after learning of Defendants' actions, demanded return of the rental-pool money, or, alternatively, its value, but Defendants failed and refused, and continue to refuse to return the rental-pool money or its equivalent monetary value to Plaintiff.

22. Defendants continued to convert additional sums of rental-pool money even after being placed on actual notice of their wrongful acts as per Plaintiff's letter dated June 15, 1992.

23. The continuous taking and conversion of this personal property by Defendants, after Defendants received actual notice, was done knowingly and intentionally, with a reckless disregard for Plaintiff's rights.

24. The reasonable market value of the personal property described above converted to date is in excess of $100,000.00, in which amount Plaintiff has been damaged. In addition, Plaintiff is entitled, by virtue of Defendants' knowing and intentional acts, to exemplary damages.

25. Defendants' tortious conversion of Plaintiff's property has caused Plaintiff to suffer damages in an amount in excess of ONE HUNDRED THOUSAND AND NO/100THS DOLLARS ($100,000.00), which represents loss of the value of the property converted, with lawful interest.

### THIRD CAUSE OF ACTION

### DECLARATORY JUDGMENT

26. Plaintiff incorporates by reference herein the facts as set out in paragraphs 7 through 16, inclusive, hereinabove.

27. Plaintiff hereby seeks, pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. §2201, a Judgment declaring that Plaintiff holds a security interest in and to fifty percent (50%) of the rental-pool income from Outdoor Resorts on Long Island, Texas, and further declaring that Plaintiff is now the owner of a portion of this collateral, being described as fifty percent (50%) of the net rental-pool income.

28. Plaintiff also seeks a Judgment declaring that **WALZEM's** payment obligations under the Memorandum of Agreement are ongoing.

### FOURTH CAUSE OF ACTION

### JUDICIAL FORECLOSURE

29. Plaintiff incorporates by reference herein the facts as set out in paragraphs 7 through 16, inclusive, hereinabove.

30. Plaintiff herein seeks the remedy of a judicial foreclosure on that portion of collateral which Plaintiff holds a

security interest in but upon which Plaintiff has not yet foreclosed.

31.  As set forth hereinabove, Plaintiff was given a security interest in fifty percent (50%) of the _total_ rental-pool rights via the terms of the _Memorandum of Agreement_ entered into between **WALZEM** and Plaintiff.

32.  On or about April 10, 1992, Plaintiff foreclosed on a portion of the collateral accordance with the terms of the _Security Agreement_.

33.  Plaintiff seeks an Order judicially foreclosing on all of the rental-pool rights which Walzem acquired from Fiesta Harbor, Inc., whether subsequently assigned or not.

### FIFTH CAUSE OF ACTION

#### RECEIVERSHIP

34.  Plaintiff requests this Court to appoint a receiver and to place the rental-pool income from Outdoor Resorts on Long Island, Texas into Receivership.

35.  Plaintiff requests that the receiver be instructed to immediately sell the rental-pool and to distribute fifty percent (50%) of the proceeds to Plaintiff because the rental-pool is incapable of a division in kind.

#### PRAYER

Plaintiff therefore prays that this Court enter a Declaratory Judgment setting out the ownership of the rental rights in question.  Plaintiff further prays that this Court

establish a Receivership as herein requested.  Plaintiff further prays that this Court award Plaintiff Judgment against Defendants, jointly and severally, for as follows:

1.  All actual damages;

2.  Exemplary damages;

3.  All legal pre-judgment and post-judgment interest;

4.  All costs incurred herein; and

5.  Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

BY: _Sidney Meadows_____
SIDNEY R. MEADOWS
Texas Bar I.D. 13885800
P.O. Box 2586
McAllen, Texas 78502
(210) 682-8316--Telephone
(210) 682-8653--Facsimile

OF COUNSEL:
FREELAND, MEADOWS & CRABB

## CERTIFICATE OF SERVICE

I, **SIDNEY R. MEADOWS**, hereby certify that on the 25th day of October, 1995, a true and correct copy of the foregoing Plaintiff's First Amended Complaint was transmitted to counsel of record, **Cynthia G. Gutierrez**, 901 Texas Commerce Bank-Neuhaus Tower, McAllen, Texas 78501-4892, and **Jerry L. Stapleton**, P.O. Box 2644, Harlingen, Texas 78551, by certified mail, return receipt requested.

_Sidney Meadows_____
**SIDNEY R. MEADOWS**

STATE OF TEXAS

COUNTY OF HIDALGO

This Memorandum of Agreement made and entered into by and between John R. Freeland, P.O. Box 2586, McAllen, Hidalgo County, Texas (Freeland), Long Island Bridge Co., Inc., a Texas corporation wholly owned by John R. Freeland, P.O. Box 2586, McAllen, Hidalgo County, Texas (Bridge Co.), and Walzem Service Corporation of San Antonio, Texas, a Texas corporation, 5300 Walzem Road, San Antonio, Bexar County, Texas (Walzem).

WITNESSETH

Whereas, the Bridge Co. is the record owner of the fee title to the Long Island Swing Bridge (the Bridge) and its approaches as more particularly described in Exhibit "A" attached hereto and made a part hereof.

Whereas, Long Island, Cameron County, Texas is an island in the Gulf of Mexico and is connected to the mainland at Port Isabel, Cameron County, Texas by the Bridge which crosses the Gulf Intracoastal Waterway and is the sole means of ingress and egress to Long Island for vehicular traffic.

Whereas, Freeland is the record owner of the fee title to a road system (the Road System) located on Long Island which joins the Bridge and services the various developments on Long Island, said Road System is more particularly described in Exhibit "B" attached hereto and made a part hereof.

Whereas, Walzem has acquired or is acquiring the remaining interests of Fiesta Harbor, Inc. in and to rental income generated by the Outdoor Resorts/South Padre Rental Office located on Long Island, Cameron County, Texas and currently owns or is acquiring various developed and undeveloped properties on Long Island as a result of its acquisition of the assets of the former Rio Grande Savings & Loan Association of Harlingen, Cameron County, Texas.

Whereas, on or about October 22, 1980, Old Queen Isabella Causeway Fishing Pier Inc. (the predecessor in interest to the Bridge Co.), John R. Freeland, and Outdoor Resorts/South Padre

MEMO-MF.AGR                    -1-

EXHIBIT "1"

entered into an agreement for the maintenance and operation of the Bridge a copy of which is attached hereto as Exhibit "C" and made a part hereof for all purposes.

Whereas, after the Bridge was substantially renovated in 1985 by Freeland and Old Queen Isabella Causeway Fishing Pier Inc., a dispute arose regarding the October 22, 1980 agreement and specifically the responsibility for repair, operation, and maintenance of the Bridge.

Whereas, the Bridge is currently encumbered by two mortgages representing security given for the advancement of funds utilized for the 1985 Bridge restoration, those liens being more particularly described as follows:

1) Deed of Trust dated October 09, 1985, recorded in Volume 1220, Page 234, Deed of Trust Records of Cameron County, Texas.

2) Deed of Trust dated April 25, 1988, recorded in Volume 434, Page 306, Official Records of Cameron County, Texas.

Whereas, the continued viability of the whole of Long Island is dependent upon the welfare and continued operations of the Bridge and Road System, which at this time is in jeopardy for the lack of a viable means or method of operating and funding same.

Whereas, in order to facilitate this agreement, the undersigned parties intend to obtain a release of the October 22, 1980 agreement and specifically that one certain easement dated October 22, 1980 recorded in Volume 1213, Page 322, Deed Records of Cameron County, Texas, a copy of which is attached hereto as Exhibit "C-1" and made a part hereof for all purposes.

Whereas, the undersigned have agreed in principal to the idea that both the Bridge and Road System serving same should be conveyed free and clear of all debt to a non-profit corporation whose members are the land owners of Long Island or their representative corporate association, so that the actual beneficiaries of said Bridge and Road System become responsible for the Bridge's and Road Systems's continued upkeep, repair and operation on a prorata shared basis.

Whereas, to additionally facilitate this agreement, the

undersigned parties have agreed to obtain the conveyance of a certain roadway on Long Island, more particularly described in Exhibit "B-1" attached hereto, to such non-profit corporation.

Whereas, to induce the Bridge Co. and Freeland to make such transfer free and clear of all liens, Walzem has agreed to pay certain considerations to the Bridge Co. and Freeland as herein after set forth.

Whereas, in return for the consideration set forth herein, the Bridge Co. and Freeland have agreed to convey title in and to their respective assets being the Bridge and Road System, free and clear of the above described liens.

NOW THEREFORE, It Is Agreed By And Between The Undersigned As Follows:

1.  The Bridge Co. will convey to the Long Island Owner's Association, Inc., a non-profit Texas corporation by Special Warranty Deed, the Bridge (being the real property as described in Exhibit "A" and all personal property located thereon) free and clear of the above described liens.

2.  Freeland will convey to the Long Island Owner's Association, Inc. a non-profit Texas corporation by Special Warranty Deed, the Road System (being the real property and improvements thereon as described in Exhibit "B").

3.  At closing, Walzem will pay in cash to the Bridge Co. the sum of $300,000.00.

4.  The total consideration to be paid by Walzem to Freeland will be $300,000.00, of which $75,000.00 in cash is to be paid at closing with the balance of $225,000.00 (the "Obligation") to be paid on the following terms and conditions:

    a)  This is a non-interest bearing obligation.

    b)  Installments against the outstanding principal balance of the Obligation are payable quarterly. The first installment is payable on or before April 15, 1989 and the others regularly and quarterly on or before

-3-

the 15th day of July, August, January, and April of each year until the Obligation is paid in full.  The first quarterly payment will be prorated from January 27, 1989 until March 31, 1989.

c)  Notwithstanding, the entire unpaid principal amount of the Obligation will be due and payable upon the sale by Walzem of substantially all of the property described in Exhibit "G", which is attached hereto and made a part hereof for all purposes.

d)  The amount of each payment under subparagraph 4(b) above, shall be equal to 50% of the "net profit" realized from the operation of the Outdoor Resort/South Padre Rental Office on Long Island, Cameron County, Texas from the previous calendar quarter (eg. the payment due April 15 shall represent 50% of the Net Profit earned from the period of January 01 to March 31).  "Net profit" shall be defined as the gross rental income from site rental, trailer rental, and sea cottage rental less the share of gross rental income paid to property owners and the following expenses related to operation of the rental office: Administration, Rental Office general and administration costs, and Home Owner's Referral fee (ie. a 5% fee paid to the Outdoor Resorts/South Padre Home Owner's Association, Inc.) and further less Walzem's monthly assessment to the Long Island Owner's Association, Inc.  Notwithstanding, in no event shall the aggregate annual "assessment" deduction exceed the $18,000.00 amount projected in Exhibit "D" under "Walzem assessment to Long Island Owner's Association".  Notwithstanding, in no event

shall the ratio of total expenses to total income (after deducting the share of gross rental income paid to property owners) exceed the projected percentages set forth in Exhibit "D" attached hereto and made a part hereof, to-wit: 61.7% for 1989, 54.6% for 1990, 49.7% for 1991, 45.3% for 1992, 41.3% for 1993, and each year thereafter. In the event the percentage of expenses or assessments are in excess of the projection, Walzem shall be liable for the difference.

e)  Walzem agrees to execute and deliver to Freeland at closing a Security Agreement and UCC-1 Financing Statement granting to Freeland a security interest in and to the portion of the rental income owned by Outdoor Resort/South Padre, in the form as attached hereto as Exhibit "E" and "F" respectively. Notwithstanding anything to the contrary herein contained, the liability of Walzem for the Obligation and any other amounts covenanted to be paid by it under this Memorandum of Agreement, shall be limited to the security interest in and to the rentals specified in this paragraph 4(e), except to the extent of any deficiencies under the provisions of Paragraph 4(d) above and under "Remedies of Secured Party on Default" Paragraph 6 of the Security Agreement attached hereto as Exhibit "E".

f)  Walzem shall annually and within sixty (60) days following the expiration of each calendar year provide Freeland a certified independent audit of the receipts and disbursements of the Outdoor Resorts/South Padre Rental Office on Long Island, Cameron County, Texas for the previous calendar year.

g)   If Walzem defaults in the performance of any obligation hereunder or in any instrument securing or collateral to it, and the default continues after Freeland gives Walzem fifteen (15) days notice of default directed to Walzem's local mailing address being 900 E. Harrison, Harlingen, Cameron County, Texas 78550, then Freeland may declare the unpaid principal balance on the Obligation immediately due. Walzem waives all demands for notices of intention to accelerate maturity and notices of acceleration of maturity, protests, notices of protest, to the extent permitted by law.

h)   The "closing date" shall be determined as the date of the simultaneous conveyance of both the Bridge and Road System to the Long Island Owner's Association, Inc.

i)   So long as Walzem is not otherwise in default and has accurately accounted for all income and expenses of the Outdoor Resorts/South Padre Rental Office, Freeland agrees to look solely to the income generated by the rental office to service the Obligation owed him.

j)   Walzem agrees in good faith to operate or cause to be operated the Outdoor Resorts/South Padre Rental Office on Long Island, Cameron County, Texas in a prudent business-like manner so as to maximize net profits.

k)   Upon the execution date of this agreement, Walzem agrees to deposit in escrow the amount of $375,000.00 cash with Rio Grande Valley Abstract Title Company to secure its obligation hereunder.

5.   This agreement is conditioned upon the following events occurring on or before closing but in no event later

than March 15, 1989, to-wit:

    a)    The acquisition by Walzem of the assets of Rio Grande Savings & Loan Association of Harlingen, Texas and specifically the properties on Long Island as foreclosed by Rio Grande Savings & Loan Association as against Outdoor Resorts/South Padre in 1988.

    b)    The execution by Outdoor Resorts/South Padre Home Owner's Association, Inc. (and the ratification by its members), John R. Freeland, and Sun Harbor Condominiums, Inc. (and the ratification by its members) Bennett Development, Inc., and Walzem Service Corporation of that one certain "Declaration of Agreement to Join in the Common Ownership, Restoration, Preservation, Maintenance and Operation of the Long Island Swing Bridge" and the formation of the Long Island Owner's Association, Inc., as a non-profit Texas corporation.

    c)    The agreement of First City National Bank of Houston - McAllen branch (formerly McAllen State Bank) to release its mortgage interest in the Bridge property and to release Freeland and the Bridge Co. of any further personal liability to repay the debt identified in the October 09, 1985 mortgage set forth above, on the same terms as heretofore have been negotiated by Freeland.

    d)    The release and termination of that one certain Easement dated October 22, 1980 recorded in Volume 213, Page 322, Deed Records of Cameron Co., Texas. Such release requires the signature of Outdoor Resorts/South Padre a joint venture (or its successor in interest).

    e)    The execution by Outdoor Resorts/South Padre

-7-

a joint venture (or its successor in interest to the roadway) of a deed of the roadway described in Exhibit "B-1" attached hereto to the Long Island Owner's Association, Inc.

f) Freeland and Bridge Co. agree to deliver to Walzem a copy of all expenditures expended by said parties in furtherance of the Bridge repair and debt service paid thereon to substantiate the approximately 1.2 million dollars spent by Freeland and Bridge Co. on the Bridge.

g) Freeland and Bridge Co. agree to transfer, assign, and convey to Long Island Owner's Association, Inc. whatever other rights of ingress and egress they may have to Long Island, if any.

6.   Survival of Covenants.  Any of the representations, warranties, covenants, and agreements of the Parties, as well as any rights and benefits of the Parties, pertaining to a period of time following the closing of the transactions contemplated hereby shall survive the closing and shall not be merged therein.

7.   Notice.  Any notice required or permitted to be delivered hereunder shall be deemed received when sent by United States mail, postage prepaid, certified mail, return receipt requested, addressed to the respective party, as the case may be, at the address set forth opposite the signature of such party hereto.

8.   Texas Law to Apply.  This agreement shall be construed under and in accordance with the laws of the State of Texas, and all obligations of the parties created hereunder are performable in Hidalgo County, Texas.

9.   Parties Bound.  This agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, successors, and assigns where

-8-

permitted by this contract.

10.  Legal Construction.  In case any one or more or the provisions contained in this agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceabililty shall not affect any other provision thereof and this contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

11.  Prior Agreements Superseded.  This agreement constitutes the sole and only agreement of the parties hereto and supersedes any prior understandings or written or oral agreements between the parties respecting the within subject matter.

12.  Time of Essence.  Time is of the essence of this agreement.

13.  Gender.  Words of any gender used in this agreement shall be held and construed to include any other gender, and words in the singular number shall be held to include the plural, and vice versa, unless the context  requires otherwise.

14.  Memorandum.  Upon request of either party, both parties shall promptly execute a memorandum of this agreement suitable for filing of record.

15.  Multiple Counterparts.  This agreement may be executed in multiple counterparts.

Executed effective this 27th day of January, 1989.

BY: _John R. Freeland_ (signature)
JOHN R. FREELAND

Address:
P. O. Box 2586, McAllen,
Hidalgo County, Texas  78502


Long Island Bridge Co., Inc.

BY: _John R. Freeland_ (signature)
JOHN R. FREELAND, President

Address:
P. O. Box 2586, McAllen,
Hidalgo County, Texas  78502


Walzem Service Corporation

BY: _(signature)_  EVP

Address:
900 E. Harrison, Harlingen,
Cameron County, Texas  78550

STATE OF TEXAS
COUNTY OF HIDALGO

This instrument was acknowledged before me on this the _16th_
day of _February_____, 1989, by JOHN R. FREELAND.

Notary Public, State of Texas
Notary's name (printed):
_Maria Roa_
Notary's commission expires:
_8-12-89_

STATE OF TEXAS
COUNTY OF HIDALGO

This instrument was acknowledged before me on this the _16th_
day of _February_____, 1989, by JOHN R. FREELAND, President, of
_Long Island Bridge Co., Inc._, a corporation, on behalf of said
corporation.

Notary Public, State of Texas
Notary's name (printed):
_Maria Roa_

Notary's commission expires: _8-12-89_

STATE OF TEXAS
COUNTY OF _Bexar___

This instrument was acknowledged before me on this the _23rd_
day of _February_____, 1989, by David W. Dillon, Executive Vice President
of _Walzem Service Corporation_, a corporation, on behalf of said
corporation.



Notary Public, State of Texas
Notary's name (printed):
Sherry A. Morehead
Notary's commission expires: 12-19-91

# SECURITY AGREEMENT

Date: January 27, 1989

Obligor: WALZEM SERVICE CORPORATION

Obligor's Mailing Address (including county): 900 E. Harrison, Harlingen, Cameron County, Texas

Secured Party: JOHN R. FREELAND

Secured Party's Mailing Address (including county):   P.O. Box 2586, McAllen, Hidalgo County, Texas 78502

Classification of Collateral: General intangible

Collateral (including all accessions): Fifty (50%) percent of the "net profit" realized from the operation of the Outdoor Resorts/South Padre Rental Office located on Long Island, Cameron County, Texas. "Net profit" shall be defined as the total gross rental income from site rental, trailer rental, and sea cottage rental less the share of gross rental income paid to property owners and the following expenses related to the operation of the rental office:    administration, rental office general and administration costs, and Home Owner Referral Fee (ie. a 5% fee paid to the Outdoor Resorts Home Owner's Association, Inc.).

Obligation

    Memorandum of Agreement

        Date: January 27, 1989

        Amount: TWO HUNDRED TWENTY-FIVE THOUSAND AND NO/100THS DOLLARS ($225,000.00)

        Obligor: WALZEM SERVICE CORPORATION

        Payee: JOHN R. FREELAND

        Terms of Payment (optional): Principal is payable in quarterly installments. The first installment is due and payable on or before April 15, 1989, and the others regularly and quarterly on or before the 15th day of July, August, January and April of each year until paid in full. The amount of each payment shall be equal to fifty (50%) percent of the "net profit" realized from the operation of the Outdoor Resorts/South Padre Rental Office located on Long Island, Cameron County, Texas as that term is defined in the Agreement, being that one certain Agreement of even date herewith by and between JOHN R. FREELAND, LONG ISLAND BRIDGE CO., INC., and WALZEM SERVICE CORPORATION.

Obligor's Representation Concerning Location of Collateral (optional):  At the Outdoor Resorts/South Padre Rental Office located on Long Island, Cameron County, Texas

    Subject to the terms of this agreement, Obligor grants to Secured Party a security interest in the collateral and all its proceeds to secure payment and performance of Obligor's obligation in this security agreement and all renewals and extensions of any of the Obligation.

EXHIBIT "2"

JRF-SECU.RE

## Obligor's Warranties

1.  Financing Statement.  To best of Obligor's knowledge, except for that in favor of Secured party, no financing statement covering the collateral is filed in any public office.

2.  Ownership.  Subject to the terms of the Agreement, Obligor owns the collateral and has the authority to grant this security interest.  To the best of Obligor's knowledge, ownership is free from any setoff, claim, restriction, lien, security interest, or encumbrance except this security interest and as set forth in the Agreement and in particular Paragraph 4e of the Agreement.

3.  Financial Information.  All information about projected income and expenses of the Outdoor Resorts/South Padre Rental Office provided to Secured Party was accurate to the best of Obligor's knowledge when submitted, as will be any information subsequently provided.

## Obligor's Covenants

1.  Protection of Collateral.  Obligor will defend the collateral against all claims and demands adverse to Secured Party's interest in it and will keep it free from all liens and from all security interests except this one.  The collateral will remain in Obligor's possession or control at all times, except as otherwise provided in this agreement.  Obligor will take all reasonable prudent and business-like steps to minimize expenses and maximize income of the Outdoor Resorts/South Padre Rental Office.

2.  Secured Party's Costs.  Obligor will pay all expense incurred by Secured Party in obtaining, preserving, perfecting, defending, and enforcing this security interest or the collateral and in collecting or enforcing the agreement.  Expenses for which Obligor is liable include, but are not limited to, accounting fees, reasonable attorney's fees, and other legal expenses. These expenses will bear interest from the dates of payments at the rate of ten (10%) per annum, and Obligor will pay Secured Party these expenses and interest on demand at a time and place reasonably specified by Secured Party.  These expenses and interest will be part of the Obligation and will be recoverable as such in all respects.

3.  Additional Documents.  Obligor will sign any papers that Secured Party considers reasonably necessary to obtain, maintain, and perfect this security interest or to comply with any relevant law.

4.  Notice of Changes.  Obligor will immediately notify Secured Party of any material change in the collateral; change in Obligor's name, address, or location; change in any matter warranted or represented in this agreement; change that may affect this security interest; and any event of default.

5.  Sale.  Obligor will not sell, transfer, or encumber any of the collateral without the prior written consent of Secured Party.

6.  Audit.  Obligor shall annually and within sixty (60) days following the expiration of each calendar year provide Secured Party a certified independent audit of the receipts and disbursements of the Outdoor Resorts/South Padre Rental Office for the previous calendar year.

7.  Records of Collateral.  Obligor will maintain accurate business-like books and records covering the collateral showing all income and expenses of the rental office.

8.  Prudent Business Practices.  Obligor in good faith will

-2-

operate or cause to be operated said rental office in a prudent business-like manner so as to maximize net profits.

**Rights and Remedies of Secured Party**

1. Generally, Secured Party may exercise the following rights and remedies either before or after default:

   a. each payment made towards the Obligation shall be accompanied by a copy of the information relied on by Obligor in making its calculation of net profit.

2. Audit. If Obligor fails to provide an audit as required by this agreement or otherwise by Secured Party, then Secured Party may obtain same and Obligor agrees to allow Secured Party and his representative unrestricted access to the books of the Outdoor Resorts/South Padre Rental Office for purposes of review and inspection. Obligor shall reimburse Secured Party on demand any and all costs incurred with such audit. Secured Party further has the right to conduct his own independent audit of the books at any time and should said audit reveal the audit of Obligor to be off more than fifteen (15%) percent in Secured Party's favor, Obligor shall reimburse Secured Party on demand for the cost of such audit; otherwise, such audit shall be at Secured Party's expense.

**Events of Default**

Subject to the terms of the Agreement, each of the following conditions is an event of default:

1. if Obligor defaults in timely payment or performance of any obligation, covenant, or liability in any written agreement between Obligor and Secured Party or in any other transaction secured by this agreement;

2. if any warranty, covenant, or representation made to Secured Party by or on behalf of Obligor proves to have been knowingly false in any material respect when made;

3. if a receiver is appointed for Obligor or any of the collateral;

4. if the collateral is assigned for the benefit of creditors or, to the extent permitted by law, if bankruptcy or insolvency proceedings commence against or by any of these parties: Obligor; any partnership of which Obligor is a general partner; and any maker, drawer, acceptor, endorser, guarantor, surety, accommodation party, or other person liable on or for any part of the obligation;

5. if any financing statement representing a valid security interest regarding the collateral but not related to this security interest and not favoring Secured Party is filed;

6. if any lien attaches to any of the collateral;

7. if any of the collateral is lost, stolen, damaged, or destroyed, unless it is promptly replaced with collateral of like quality or restored to its former condition;

8. if Obligor fails to prepare and deliver to Secured Party a certified independent audit within sixty (60) days following the expiration of each calendar year of the income and expenses of Outdoor Resorts/South Padre Rental Office on Long Island for the previous calendar year.

-3-

## Remedies of Secured Party on Default

During the existence of any event of default, Secured Party may declare the unpaid principal of the Obligation immediately due in whole or part, enforce the Obligation, and exercise any rights and remedies granted by the Texas Uniform Commercial Code or by this agreement, including the following, providing the default continues after Secured Party has given Obligor fifteen (15) days' notice of default directed to Obligor's Mailing Address:

1. require Obligor to deliver to Secured Party all books and records relating to the collateral;

2. require Obligor to assemble the collateral and make it available to Secured Party at a place reasonably convenient to both parties;

3. take possession of any of the collateral and for this purpose enter any premises where it is located if this can be done without breach of the peace;

4. sell, lease, or otherwise dispose of any of the collateral in accord with the rights, remedies, and duties of a secured party under Chapters 2 and 9 of the Texas Uniform Commercial Code after giving notice as required by those chapters; unless the collateral threatens to decline speedily in value, is perishable, or would typically be sold on a recognized market, Secured Party will give Obligor reasonable notice of any public sale of the collateral or of a time after which it may be otherwise disposed of without further notice to Obligor; in this event, notice will be deemed reasonable if it is mailed, postage prepaid, to Obligor at the address specified in this agreement at least five (5) days before any public sale or five (5) days before the time when the collateral may be otherwise disposed of without further notice to Obligor;

5. apply any proceeds from disposition of the collateral after default in the manner specified in Chapter 9 of the Texas Uniform Commercial Code, including payment of Secured Party's reasonable attorney's fees and court expenses; and

6. if Obligor has failed to properly account to Secured Party for the net profits of the rental office, and if any disposition of the collateral fails to satisfy said default, to the extent (but only to the extent), of the improperly accounted for net profits, collect from Obligor such deficiency arising from such failure to account properly.

## General Provisions

1. Parties Bound. Secured Party's rights under this agreement shall inure to the benefit of its successors and assigns. Assignment of any part of the obligation and delivery by Secured party of any part of the collateral will fully discharge Secured Party from responsibility for that part of the collateral. If Obligor is more than one, all their representations, warranties, and agreements are joint and several. Obligor's obligations under this agreement shall bind Obligor's personal representatives, successors, and assigns.

2. Waiver. Neither delay in exercise nor partial exercise of any of Secured Party's remedies or rights shall waive further exercise of those remedies or rights. Secured Party's failure to exercise remedies or rights does not waive subsequent exercise of those remedies or rights. Secured Party's waiver of any default does not waive further default. Secured Party's waiver of any right in this agreement or of any default is binding only if it is in writing. Secured Party may remedy any default without waiving it.

-4-

3. **Reimbursement.** If Obligor fails to perform any of Obligor's obligations, Secured Party may perform those obligations and be reimbursed by Obligor on demand at the place where the obligation is payable for any sums so paid, including attorney's fees, accounting fees, and other legal expenses, plus interest on those sums from the dates of payment at the rate of ten (10%) per annum for matured, unpaid amounts but in any event not to exceed the maximum amount allowed by law. The sum to be reimbursed shall be secured by this security agreement.

4. **Modifications.** No provisions of this agreement shall be modified or limited except by written agreement.

5. **Severability.** The unenforceability of any provision of this agreement will not affect the enforceability or validity of any other provision.

6. **Applicable Law.** This agreement will be construed according to Texas laws.

7. **Place of Performance.** This agreement is to be performed in the county of Secured Party's mailing address.

8. **Financing Statement.** A carbon, photographic, or other reproduction of this agreement or any financing statement covering the collateral is sufficient as a finance statement.

9. **Presumption of Truth and Validity.** If the collateral is sold after default, recitals in the bill of sale or transfer will be prima facie evidence of their truth, and all prerequisites to the sale specified by this agreement and by the Texas Uniform Commercial Code will be presumed satisfied.

10. **Singular and Plural.** When the context requires, singular nouns and pronouns include the plural.

11. **Priority of Security Interest.** This security interest shall neither affect nor be affected by any other security for any of the obligation. Neither extensions of any of the obligation nor releases of any of the collateral will affect the priority of validity of this security interest with references to any third person.

12. **Cumulative Remedies.** Foreclosure of this security interest by suit does not limit Secured Party's remedies, including the right to sell the collateral under the terms of this agreement. All remedies of Secured Party may be exercised at the same or different times, and no remedy shall be a defense to any other. Secured Party's rights and remedies include all those granted by law or otherwise, in addition to those specified in this agreement.

13. **Agency.** Obligor's appointment of Secured Party as Obligor's agent is coupled with an interest and will survive any disability of Obligor.

14. Notwithstanding any other provision of the Agreement to the contrary, Secured Party acknowledges that Obligor is not personally liable for the Obligation and Secured Party's sole recourse in the event of any default under the Obligation, or any instrument, document, or other writing evidencing, securing or pertaining to the Obligation shall be to the Collateral, except to the extent otherwise set forth under "Remedies of Secured Party on Default" paragraph 6 hereof and paragraph 4d and 4e of that certain Memorandum of Agreement dated January 27, 1989 above described.

SECURED PARTY:

OBLIGOR:

WALZEM SERVICE CORPORATION

_____
JOHN R. FREELAND

BY: _____  EVP

## NOTICE OF PUBLIC SALE

TO:   **WALZEM SERVICE CORPORATION**
      900 E. Harrison
      Harlingen, Texas  78551

                                          CERTIFIED MAIL/P 055 288 593
                                          RETURN RECEIPT REQUESTED
                                          REGULAR MAIL

      Mr. Victor Gaenzel, Jr.
      Site Manager
      Walzem Service Corporation
      5300 Walzem
      San Antonio, Texas  78218

CERTIFIED MAIL/P 055 288 594
RETURN RECEIPT REQUESTED
REGULAR MAIL

On April 10, 1992, at 1:30 p.m., at Outdoor Resorts Rental Office, 900 E. Garcia Street, Port Isabel, Cameron County, Texas, located adjacent to the City of Port Isabel, the following goods will be exposed to sale at public auction without reserve:

50% of the "net profit" realized from the operation of the Outdoor Resorts/South Padre Rental Office located on Long Island, Cameron County, Texas.  "Net Profit" shall be defined as the total gross income from site rental, trailer rental, and sea cottage rental less the share of gross rental income paid to the property owners and the following expenses related to the operation of the rental office:  administration, rental office general and administration costs, and Home Owners Referral Fee (i.e. a 5% fee paid to the Outdoor Resorts Home Owner's Association, Inc.)

This sale is held to enforce the rights of John R. Freeland, of 806 Pecan, McAllen, Hidalgo County, Texas, as the secured party arising under a security agreement executed with WALZEM SERVICE CORPORATION of 900 E. Harrison, Harlingen, Cameron County, Texas, as debtor, on file at Cameron County, File 138955.

*John R. Freeland*
JOHN R. FREELAND, Secured Party

PS-WALZEM.NOT/JRF:mv

EXHIBIT "3"

