50

United States District Court
Southern District of Texas
FILED

JUL - 5 1996

Michael N. Milby, Clerk of Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| JOHN R. FREELAND | § | |
| | § | |
| VS. | § | **CIVIL ACTION NO. M94-209** |
| | § | |
| WALZEM SERVICE CORP., | § | |
| RANDALL HENDERSON, | § | |
| O.R./CITY, INC., AND | § | |
| OUTDOOR RESORTS OF TEXAS, INC. | § | |

**WALZEM SERVICE CORP.'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT THEREOF**

TO THE HONORABLE JUDGE OF SAID COURT:

**WALZEM SERVICE CORP. AND O.R./CITY, INC.,** Defendants in the above-

entitled and numbered cause, submit this Motion for Partial Summary Judgment and

Memorandum in Support Thereof pursuant to Fed. R. Civ. P. 56(b) seeking a summary

judgment in the Defendant's favor dismissing the action on the ground that there is

no genuine issue of material fact and that the Defendant is entitled to a judgment as

a matter of law ruling that Defendant's obligation under the MEMORANDUM OF

AGREEMENT and the SECURITY AGREEMENT as described in this Motion was

without recourse.



I.

PARTIES

1.    Defendant WALZEM SERVICE CORP (hereinafter "WALZEM") is a

subsidiary of CITY SAVINGS AND LOAN ASSOCIATION of which the RESOLUTION

TRUST CORPORATION was appointed Receiver.  Defendant O.R./CITY, INC., is a

subsidiary of WALZEM.   Pursuant  to  the  provisions  of  the  Resolution  Trust

Corporation Completion Act, 12 U.S.C. § 1441a(m)(1), FDIC is the statutory successor to the RESOLUTION TRUST CORPORATION as receiver of CITY SAVINGS AND LOAN ASSOCIATION.   WALZEM and O.R./CITY, INC., are named as co-defendants in the underlying cause of action before this Court.

2.     Plaintiff JOHN R. FREELAND (hereinafter "FREELAND") is a citizen of the state of Texas and resides in Hidalgo County, Texas.  FREELAND is the plaintiff in the underlying cause of action before this Court.

3.     Defendant RANDALL HENDERSON (hereinafter "HENDERSON") is an individual who has already entered an appearance herein.

4.     Defendant OUTDOOR RESORTS OF TEXAS, INC. has already entered an appearance herein.

II.

Factual Background of the Litigation

5.      On or about January 27, 1989, WALZEM executed and delivered to FREELAND a MEMORANDUM OF AGREEMENT and the SECURITY AGREEMENT copies of which are attached hereto as Exhibit "A" and Exhibit "B" respectively and incorporated herein as though set forth at length.

6.     The MEMORANDUM OF AGREEMENT and the SECURITY AGREEMENT were drafted by or for FREELAND.

7.     The underlying transaction leading to the execution of the MEMORANDUM OF AGREEMENT and the SECURITY AGREEMENT involved the sale of the swing bridge connecting Port Isabel, Cameron County, Texas, to Long Island

2

a/k/a Mud Island (currently known as Outdoor Resorts) by FREELAND to WALZEM. The sales price for the swing bridge was $300,000.00. The amount of $75,000.00 was paid by WALZEM in cash at closing and the remaining sales price, $225,000.00, was payable in quarterly installments beginning on or about April 15, 1989. Along with the execution of the MEMORANDUM OF AGREEMENT and to secure the payment of the amount of $225,000.00, WALZEM also executed the SECURITY AGREEMENT.

At the time of the transaction, WALZEM owned 50% of the net profits realized from the rental operation of the Outdoor Resorts/South Padre Rental Office. The underlying Obligation to FREELAND was secured by WALZEM'S 50% interest in the net profit realized from the operation of the Outdoor Resorts/South Padre Rental Office located on Long Island, Cameron County, Texas.

8.     Thereafter, in December of 1991, FREELAND declared a default in the payment of the $225,000.00, accelerated the debt, and on or about April 10 of 1992, foreclosed upon his security interest.  Freeland claims that the balance remaining on the debt was approximately $119,900.00 when FREELAND conducted a sale of the 50% interest in the net rental profits and bought the interest himself for $1,000.00 at the foreclosure sale.  As a result of the foreclosure sale, FREELAND claims ownership of WALZEM'S 50% interest in the net rental profits.

9.     On or about October 12, 1994, FREELAND instituted a cause of action against Defendants seeking judgment for a deficiency he claims resulted from the foreclosure sale in the case styled "JOHN R. FREELAND V. WALZEM SERVICE CORP.,

3

RANDALL HENDERSON, OUTDOOR RESORTS CITY, INC. AND OUTDOOR RESORTS OF TEXAS, INC.," Cause No. C-4745-94-F in the 332nd Judicial District Court of Hidalgo County, Texas (hereinafter the "state court lawsuit").   On or about November 18, 1994, the Resolution Trust Corporation as Receiver of WALZEM removed the state court lawsuit to this Court.

10.    On or about October 24, 1995, this Court granted Plaintiff leave to file his First Amended Complaint in which Plaintiff asserts five causes of action against Defendant WALZEM.   In his third cause of action, Plaintiff seeks a Declaratory Judgment from this Court.  Plaintiff asks this Court to find this a recourse obligation where Defendant WALZEM would be personally liable for the debt.

11.    FREELAND is seeking a principal deficiency against Movants in the approximate amount of $118,900.00.

III.

### This Case is Appropriate for Partial Summary Judgment

12.    Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).  For declaratory judgment actions specifically, Federal Rule of Civil Procedure 56(b) provides that:

> A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's

4

favor as to all or any part thereof.

Fed. R. Civ. P. 56(b). The policy underlying this rule is "to achieve the just, speedy, and inexpensive determination of actions...". Fontenot v. Upjohn Co., 780 F.2d 1190, 1197 (5th Cir. 1986). The Court is therefore, required to "pierce the pleading and to assess the proof in order to see whether there is a genuine need for trial," Scarboro v. Universal C.I.T. Credit Corp., 364 F.2d 10, 15 (5th Cir. 1966) (quoting the Advisory Committee Note, Fed. R. Civ. P. 56(e) (1983)); 6 Jeremy C. Moore, et al., Moore's Federal Practice paragraph 56.04[10] (2Ed. 1985).

IV.

## NO GENUINE ISSUE OF MATERIAL FACT

13.    Summary judgment is proper where there is no genuine issue as to any material fact. *F.D.I.C. v. Cardinal Well Oil Well Servicing Co., Inc.*, 837 F.2d 1369 (5th Cir. 1988). Suits to enforce negotiable instruments are among the most suitable classes of cases for summary judgment. *Cardinal*, 837 F.2d at 1371; *Lloyd v. Lawrence*, 472 F.2d 313 (5th Cir. 1973). Often suits on notes and instruments have no genuine issues of material facts because both parties agree that the instruments were executed and are controlling as to the parties' relationship. In the case at bar, it is undisputed that the SECURITY AGREEMENT and the MEMORANDUM OF AGREEMENT were executed and control the relationship of the parties. The only matter left unresolved is the legal effect of the SECURITY AGREEMENT and the MEMORANDUM OF AGREEMENT. Construction of contracts is a question of law for the court. *Cox v. Bell Helicopter Int'l*, 425 F.Supp. 99 (1977). The construction of

5

the SECURITY AGREEMENT and the MEMORANDUM OF AGREEMENT are, therefor,

appropriate for summary judgment determination by this Court.

V.

ANALYSIS & ARGUMENT

14.    The SECURITY AGREEMENT and MEMORANDUM OF AGREEMENT

create an obligation that is without recourse.

15.    The SECURITY AGREEMENT states on page 5, paragraph 14, as follows:

Notwithstanding any other provision of the Agreement to the contrary, Secured Party acknowledges that Obligor is not personally liable for the Obligation and Secured Party's sole recourse in the event of any default under the Obligation, or any instrument, document, or other writing evidencing, securing or pertaining to the Obligation shall be to the Collateral, except to the extent otherwise set forth under "Remedies of Secured Party on Default" paragraph 6 hereof and paragraph 4d and 4e of that certain MEMORANDUM OF AGREEMENT dated January 27, 1989 above described. (emphasis added)

16.    The SECURITY AGREEMENT and MEMORANDUM OF AGREEMENT

contain two circumstances that limit non-recourse status.

17.    As mentioned in the preceding paragraph, the SECURITY AGREEMENT

states on page 4, paragraph 6 as follows:

If the Obligor has failed to properly account to Secured Party for the net profits of the rental office, and if any disposition of the collateral fails to satisfy said default, to the extent (but only to the extent), of the improperly accounted for net profits, collect from Obligor such deficiency arising from such failure to account properly.

18.    As mentioned in the preceding paragraph, the MEMORANDUM OF

AGREEMENT states on page 4, paragraphs 4d and 4e as follows:

4d)    The amount of each payment under subparagraph 4(b) above, shall be equal to 50% of the "net profit" realized from the operation of

6

the Outdoor Resorts/South Padre Rental Office on Long Island, Cameron County, Texas from the previous calendar quarter (eg. the payment due April 15, shall represent 50% of the Net Profit earned from the period of January 01 to March 31). "Net profit" shall be defined as the gross rental income from site rental, trailer rental, and sea cottage rental less the share of gross rental income paid to property owners and the following expenses related to operation of the rental office: Administration, Rental office general and administration costs, and Home Owner's Referral fee (ie. a 5% fee paid to the Outdoor Resorts/South Padre Home Owner's Association, Inc.) and further less Walzem's monthly assessment to the Long Island Owner's Association, Inc. Notwithstanding, in no event shall the aggregate annual "assessment" deduction exceed the $18,000.00 amount projected in Exhibit "D" under "Walzem assessment to Long Island Owner's Association". Notwithstanding, in no event shall the ratio of total expenses to total income (after deducting the share of gross rental income paid to property owners) exceed the projected percentages set forth in Exhibit "D" attached hereto and made a part hereof, to-wit:   61.7% for 1989, 54.6% for 1990, 49.7% for 1991, 45.3% for 1992, 41.3% for 1993, and each year thereafter.  In the event the percentage of expenses or assessments are in excess of the projection, Walzem shall be liable for the difference.

4e)    Walzem agrees to execute and deliver to Freeland at closing a Security Agreement and UCC-1 Financing Statement granting to Freeland a security interest in and to the portion of the rental income owned by Outdoor Resorts/South Padre, in the form as attached hereto as Exhibit "E" and "F" respectively.  Notwithstanding anything to the contrary herein contained, the liability of Walzem for the Obligation and any other amounts covenanted to be paid by it under this Memorandum of Agreement, shall be limited to the security interest in and to the rentals specified in this paragraph 4(e), except to the extent of any deficiencies under the provisions of Paragraph 4(d) above and under the "Remedies of Secured Party on Default" Paragraph 6 of the Security Agreement attached hereto as Exhibit "E". (Emphasis added).

18.    The documents were drafted by or for FREELAND.  Under the rule of "contra proferentum" a contract is to be construed against the drafter if the interpretation advanced by the non-drafter is reasonable. Fort Vancouver Plywood Co. v. United States, 860 F2d 409 (Fed. Cir. 1988).  An instrument must be construed

7

against its drafter. <u>Advanced Process Supply Co. v. Litton Indep. Credit Corp.</u>, 745 F2d 1076 (7th Cir. 1984).   In the case of any ambiguity, therefor, the MEMORANDUM OF AGREEMENT and the SECURITY AGREEMENT must be construed against FREELAND, the drafter.

20.   The language stated in page 5, paragraph 14, of the SECURITY AGREEMENT clearly limits Freeland's ability to seek recourse liability.   As stated therein "Secured Party (Freeland) acknowledges that Obligor (Walzem) is not personally liable for the Obligation and Secured Party's sole recourse in the event of any default under the Obligation, or any instrument, document, or other writing evidencing, securing or pertaining to the Obligation shall be to the Collateral.

21.   The provision excludes certain circumstances from this recovery limitation. The first circumstance contained on page 4, paragraph 6, of the SECURITY AGREEMENT bars non-recourse status in the event that the profit calculation is inaccurate. Freeland has not alleged that the profits were not accurately calculated and thus this circumstance is not applicable.

22.   The second exclusion from the recourse limitation is contained on page 4, paragraphs 4d and 4e of the MEMORANDUM OF AGREEMENT. Paragraph 4d provides a method for calculating payment amounts. The provisions ties payments to profits. Paragraph 4e provides for execution of documents necessary to perfect Freeland's secured position and also specifically restates the limitation to Freeland's ability to seek recourse liability. As stated therein, "Notwithstanding anything to the contrary herein contained, the liability of Walzem for the Obligation and any other

8

amounts covenanted to be paid by it under this Memorandum of Agreement, shall be limited to the security interest in and to the rentals specified in this paragraph 4(e)..." Neither paragraph hinders the non-recourse status of the Obligation.

23.   Parties to a contract may agree upon remedies for breach thereof and that the agreed remedy is exclusive. *Stergios v. Babcock*, 568 S.W.2d 707 (Tex. Civ. App.--Fort Worth 1978, writ ref'd n.r.e.). In the SECURITY OF AGREEMENT and the MEMORANDUM OF AGREEMENT, FREELAND repeatedly agreed to look only to the security interest in the rentals to satisfy any debt in the case of a default. The SECURITY AGREEMENT clearly states that the "Secured Party's *sole recourse* in the event of any default under the Obligation, or any instrument, document, or other writing evidencing, securing or pertaining to the Obligation shall be to the Collateral." (Emphasis Added). The MEMORANDUM OF AGREEMENT further clarifies that "*Notwithstanding anything to the contrary herein contained*, the liability of Walzem for the Obligation and any other amounts covenanted to be paid by it under this Memorandum of Agreement, shall be limited to the security interest in and to the rentals." (Emphasis Added). Agreements such as these, creating a sole remedy, have been upheld by Texas courts. *Transcontinental Gas Pipe Line Corp. v. American Nat'l Petroleum Co.*, 763 S.W.2d 809 (Tex.App.--Texarkana 1988, no writ). A proper reading of this agreement requires that this obligation be construed as nonrecourse, that Defendant WALZEM is not personally liable for any outstanding debt, and that Plaintiff can look only to the security interest in the rentals for satisfaction.

9

VI.

## CONCLUSION

There is no material fact that the SECURITY AGREEMENT and MEMORANDUM OF AGREEMENT were executed by the parties herein and are controlling in this controversy. The disagreement stems from the interpretation of the terms contained therein with regard to whether the obligation is recourse or non-recourse. As stated above, the law favors the non-drafter's reasonable interpretation and a reasonable interpretation in this case is that the obligation is non-recourse.

Based on the foregoing, Defendant WALZEM SERVICE CORP. is entitled to summary judgment against JOHN R. FREELAND declaring that the underlying obligation was without recourse and that Plaintiff's right to seek a deficiency judgment terminated when he foreclosed his secured position on or about April of 1992.

VI.

## PRAYER

For the foregoing reasons, Defendant WALZEM SERVICE CORP. respectfully requests the Court grant this Motion for Summary Judgment and declare Defendant's obligations under the MEMORANDUM OF AGREEMENT and SECURITY AGREEMENT to be without recourse and that Plaintiff's foreclosure under the MEMORANDUM OF AGREEMENT and SECURITY AGREEMENT terminated Defendant's obligation to pay any deficiency to JOHN R. FREELAND.

10

Respectfully submitted,

BY:  *Edmundo O. Rami...*

*with permission Cynthia G. Gut...*

Edmundo O. Ramirez
Federal I.D. No.: 8972
State Bar No.: 16501420
Attorney in Charge for
Walzem Service Corp. and O.R./City, Inc.
Defendant
Cynthia G. Gutierrez
Federal I.D. No.:  13321
State Bar No.: 08640550
901 Texas Commerce Bank-Neuhaus Tower
McAllen, Texas 78501
(210) 682-2440
Fax (210) 682-0820

OF COUNSEL:
ELLIS, KOENEKE & RAMIREZ, L.L.P.
901 Texas Commerce Bank-Neuhaus Tower
McAllen, Texas 78501
(210) 682-2440
Fax (210) 682-0820

F:\WPDOCS\cgg\b\94621SUM.JUD

11

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument has on this 5th day of JULY, 1996, delivered in the manner indicated below, to the following:

Mr. Jerry Stapleton
STAPLETON, WHITTINGTON, CURTIS & BOSWELL
PO Box 2644
Harlingen, Texas 78551

Via CM/RRR No. P 066 094 634

Mr. William Peisen
1113 Pecan
McAllen, Texas   78501

Via CM/RRR No. P 066 094 635

CYNTHIA G. GUTIERREZ

STATE OF TEXAS

COUNTY OF HIDALGO

This Memorandum of Agreement made and entered into by and between John R. Freeland, P.O. Box 2586, McAllen, Hidalgo County, Texas (Freeland), Long Island Bridge Co., Inc., a Texas corporation wholly owned by John R. Freeland, P.O. Box 2586, McAllen, Hidalgo County, Texas (Bridge Co.), and Walzem Service Corporation of San Antonio, Texas, a Texas corporation, 5300 Walzem Road, San Antonio, Bexar County, Texas (Walzem).

## WITNESSETH

Whereas, the Bridge Co. is the record owner of the fee title to the Long Island Swing Bridge (the Bridge) and its approaches as more particularly described in Exhibit "A" attached hereto and made a part hereof.

Whereas, Long Island, Cameron County, Texas is an island in the Gulf of Mexico and is connected to the mainland at Port Isabel, Cameron County, Texas by the Bridge which crosses the Gulf Intracoastal Waterway and is the sole means of ingress and egress to Long Island for vehicular traffic.

Whereas, Freeland is the record owner of the fee title to a road system (the Road System) located on Long Island which joins the Bridge and services the various developments on Long Island, said Road System is more particularly described in Exhibit "B" attached hereto and made a part hereof.

Whereas, Walzem has acquired or is acquiring the remaining interests of Fiesta Harbor, Inc. in and to rental income generated by the Outdoor Resorts/South Padre Rental Office located on Long Island, Cameron County, Texas and currently owns or is acquiring various developed and undeveloped properties on Long Island as a result of its acquisition of the assets of the former Rio Grande Savings & Loan Association of Harlingen, Cameron County, Texas.

Whereas, on or about October 22, 1980, Old Queen Isabella Causeway Fishing Pier Inc. (the predecessor in interest to the Bridge Co.), John R. Freeland, and Outdoor Resorts/South Padre

MEMO-MF.AGR                        -1-

entered into an agreement for the maintenance and operation of the Bridge a copy of which is attached hereto as Exhibit "C" and made a part hereof for all purposes.

Whereas, after the Bridge was substantially renovated in 1985 by Freeland and Old Queen Isabella Causeway Fishing Pier Inc., a dispute arose regarding the October 22, 1980 agreement and specifically the responsibility for repair, operation, and maintenance of the Bridge.

Whereas, the Bridge is currently encumbered by two mortgages representing security given for the advancement of funds utilized for the 1985 Bridge restoration, those liens being more particularly described as follows:

1)  Deed of Trust dated October 09, 1985, recorded in Volume 1220, Page 234, Deed of Trust Records of Cameron County, Texas.

2)  Deed of Trust dated April 25, 1988, recorded in Volume 434, Page 306, Official Records of Cameron County, Texas.

Whereas, the continued viability of the whole of Long Island is dependent upon the welfare and continued operations of the Bridge and Road System, which at this time is in jeopardy for the lack of a viable means or method of operating and funding same.

Whereas, in order to facilitate this agreement, the undersigned parties intend to obtain a release of the October 22, 1980 agreement and specifically that one certain easement dated October 22, 1980 recorded in Volume 1213, Page 322, Deed Records of Cameron County, Texas, a copy of which is attached hereto as Exhibit "C-1" and made a part hereof for all purposes.

Whereas, the undersigned have agreed in principal to the idea that both the Bridge and Road System serving same should be conveyed free and clear of all debt to a non-profit corporation whose members are the land owners of Long Island or their representative corporate association, so that the actual beneficiaries of said Bridge and Road System become responsible for the Bridge's and Road Systems's continued upkeep, repair and operation on a prorata shared basis.

Whereas, to additionally facilitate this agreement, the

undersigned parties have agreed to obtain the conveyance of a certain roadway on Long Island, more particularly described in Exhibit "B-1" attached hereto, to such non-profit corporation.

Whereas, to induce the Bridge Co. and Freeland to make such transfer free and clear of all liens, Walzem has agreed to pay certain considerations to the Bridge Co. and Freeland as herein after set forth.

Whereas, in return for the consideration set forth herein, the Bridge Co. and Freeland have agreed to convey title in and to their respective assets being the Bridge and Road System, free and clear of the above described liens.

NOW THEREFORE, It Is Agreed By And Between The Undersigned As Follows:

1. The Bridge Co. will convey to the Long Island Owner's Association, Inc., a non-profit Texas corporation by Special Warranty Deed, the Bridge (being the real property as described in Exhibit "A" and all personal property located thereon) free and clear of the above described liens.

2. Freeland will convey to the Long Island Owner's Association, Inc. a non-profit Texas corporation by Special Warranty Deed, the Road System (being the real property and improvements thereon as described in Exhibit "B").

3. At closing, Walzem will pay in cash to the Bridge Co. the sum of $300,000.00.

4. The total consideration to be paid by Walzem to Freeland will be $300,000.00, of which $75,000.00 in cash is to be paid at closing with the balance of $225,000.00 (the "Obligation") to be paid on the following terms and conditions:

    a) This is a non-interest bearing obligation.

    b) Installments against the outstanding principal balance of the Obligation are payable quarterly. The first installment is payable on or before April 15, 1989 and the others regularly and quarterly on or before

-3-

the 15th day of July, August, January, and April of each year until the Obligation is paid in full. The first quarterly payment will be prorated from January 27, 1989 until March 31, 1989.

c) Notwithstanding, the entire unpaid principal amount of the Obligation will be due and payable upon the sale by Walzem of substantially all of the property described in Exhibit "G", which is attached hereto and made a part hereof for all purposes.

d) The amount of each payment under subparagraph 4(b) above, shall be equal to 50% of the "net profit" realized from the operation of the Outdoor Resort/South Padre Rental Office on Long Island, Cameron County, Texas from the previous calendar quarter (eg. the payment due April 15 shall represent 50% of the Net Profit earned from the period of January 01 to March 31). "Net profit" shall be defined as the gross rental income from site rental, trailer rental, and sea cottage rental less the share of gross rental income paid to property owners and the following expenses related to operation of the rental office: Administration, Rental Office general and administration costs, and Home Owner's Referral fee (ie. a 5% fee paid to the Outdoor Resorts/South Padre Home Owner's Association, Inc.) and further less Walzem's monthly assessment to the Long Island Owner's Association, Inc. Notwithstanding, in no event shall the aggregate annual "assessment" deduction exceed the $18,000.00 amount projected in Exhibit "D" under "Walzem assessment to Long Island Owner's Association". Notwithstanding, in no event

-4-

shall the ratio of total expenses to total income (after deducting the share of gross rental income paid to property owners) exceed the projected percentages set forth in Exhibit "D" attached hereto and made a part hereof, to-wit: 61.7% for 1989, 54.6% for 1990, 49.7% for 1991, 45.3% for 1992, 41.3% for 1993, and each year thereafter. In the event the percentage of expenses or assessments are in excess of the projection, Walzem shall be liable for the difference.

e)    Walzem agrees to execute and deliver to Freeland at closing a Security Agreement and UCC-1 Financing Statement granting to Freeland a security interest in and to the portion of the rental income owned by Outdoor Resort/South Padre, in the form as attached hereto as Exhibit "E" and "F" respectively. Notwithstanding anything to the contrary herein contained, the liability of Walzem for the Obligation and any other amounts covenanted to be paid by it under this Memorandum of Agreement, shall be limited to the security interest in and to the rentals specified in this paragraph 4(e), except to the extent of any deficiencies under the provisions of Paragraph 4(d) above and under "Remedies of Secured Party on Default" Paragraph 6 of the Security Agreement attached hereto as Exhibit "E".

f)    Walzem shall  annually and within sixty (60) days following the expiration of each calendar year provide Freeland a certified independent audit of the receipts and disbursements of the Outdoor Resorts/South Padre Rental Office on Long Island, Cameron County, Texas for the previous calendar year.

-5-

g)   If Walzem defaults in the performance of any obligation hereunder or in any instrument securing or collateral to it, and the default continues after Freeland gives Walzem fifteen (15) days notice of default directed to Walzem's local mailing address being 900 E. Harrison, Harlingen, Cameron County, Texas 78550, then Freeland may declare the unpaid principal balance on the Obligation immediately due.  Walzem waives all demands for notices of intention to accelerate maturity and notices of acceleration of maturity, protests, notices of protest, to the extent permitted by law.

h)   The "closing date" shall be determined as the date of the simultaneous conveyance of both the Bridge and Road System to the Long Island Owner's Association, Inc.

i)   So long as Walzem is not otherwise in default and has accurately accounted for all income and expenses of the Outdoor Resorts/South Padre Rental Office, Freeland agrees to look solely to the income generated by the rental office to service the Obligation owed him.

j)   Walzem agrees in good faith to operate or cause to be operated the Outdoor Resorts/South Padre Rental Office on Long Island, Cameron County, Texas in a prudent business-like manner so as to maximize net profits.

k)   Upon the execution date of this agreement, Walzem agrees to deposit in escrow the amount of $375,000.00 cash with Rio Grande Valley Abstract Title Company to secure its obligation hereunder.

5.   This agreement is conditioned upon the following events occurring on or before closing but in no event later

than March 15, 1989, to-wit:

a)   The acquisition by Walzem of the assets of Rio Grande Savings & Loan Association of Harlingen, Texas and specifically the properties on Long Island as foreclosed by Rio Grande Savings & Loan Association as against Outdoor Resorts/South Padre in 1988.

b)   The execution by Outdoor Resorts/South Padre Home Owner's Association, Inc. (and the ratification by its members), John R. Freeland, and Sun Harbor Condominiums, Inc. (and the ratification by its members) Bennett Development, Inc., and Walzem Service Corporation of that one certain "Declaration of Agreement to Join in the Common Ownership, Restoration, Preservation, Maintenance and Operation of the Long Island Swing Bridge" and the formation of the Long Island Owner's Association, Inc., as a non-profit Texas corporation.

c)   The agreement of First City National Bank of Houston – McAllen branch (formerly McAllen State Bank) to release its mortgage interest in the Bridge property and to release Freeland and the Bridge Co. of any further personal liability to repay the debt identified in the October 09, 1985 mortgage set forth above, on the same terms as heretofore have been negotiated by Freeland.

d)   The release and termination of that one certain Easement dated October 22, 1980 recorded in Volume 213, Page 322, Deed Records of Cameron Co., Texas. Such release requires the signature of Outdoor Resorts/South Padre a joint venture (or its successor in interest).

e)   The execution by Outdoor Resorts/South Padre

-7-

a joint venture (or its successor in interest to the roadway) of a deed of the roadway described in Exhibit "B-1" attached hereto to the Long Island Owner's Association, Inc.

f) Freeland and Bridge Co. agree to deliver to Walzem a copy of all expenditures expended by said parties in furtherance of the Bridge repair and debt service paid thereon to substantiate the approximately 1.2 million dollars spent by Freeland and Bridge Co. on the Bridge.

g) Freeland and Bridge Co. agree to transfer, assign, and convey to Long Island Owner's Association, Inc. whatever other rights of ingress and egress they may have to Long Island, if any.

6. **Survival of Covenants.** Any of the representations, warranties, covenants, and agreements of the Parties, as well as any rights and benefits of the Parties, pertaining to a period of time following the closing of the transactions contemplated hereby shall survive the closing and shall not be merged therein.

7. **Notice.** Any notice required or permitted to be delivered hereunder shall be deemed received when sent by United States mail, postage prepaid, certified mail, return receipt requested, addressed to the respective party, as the case may be, at the address set forth opposite the signature of such party hereto.

8. **Texas Law to Apply.** This agreement shall be construed under and in accordance with the laws of the State of Texas, and all obligations of the parties created hereunder are performable in Hidalgo County, Texas.

9. **Parties Bound.** This agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, successors, and assigns where

-8-



permitted by this contract.

10. **Legal Construction.** In case any one or more or the provisions contained in this agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision thereof and this contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

11. **Prior Agreements Superseded.** This agreement constitutes the sole and only agreement of the parties hereto and supersedes any prior understandings or written or oral agreements between the parties respecting the within subject matter.

12. **Time of Essence.** Time is of the essence of this agreement.

13. **Gender.** Words of any gender used in this agreement shall be held and construed to include any other gender, and words in the singular number shall be held to include the plural, and vice versa, unless the context requires otherwise.

14. **Memorandum.** Upon request of either party, both parties shall promptly execute a memorandum of this agreement suitable for filing of record.

15. **Multiple Counterparts.** This agreement may be executed in multiple counterparts.

Executed effective this 27th day of January, 1989.

BY: _____          Address:
JOHN R. FREELAND                      P. O. Box 2586, McAllen,
                                      Hidalgo County, Texas  78502


Long Island Bridge Co., Inc.

BY: _____          Address:
JOHN R. FREELAND, President           P. O. Box 2586, McAllen,
                                      Hidalgo County, Texas  78502


Walzem Service Corporation

BY: _____          Address:
                                      900 E. Harrison, Harlingen,
                                      Cameron County, Texas  78550

STATE OF TEXAS
COUNTY OF HIDALGO

This instrument was acknowledged before me on this the _14th_ day of _January_, 1989, by _JOHN R. FREELAND_.

Notary Public, State of Texas
Notary's name (printed):
_Maria Roa_
Notary's commission expires:
_8-12-89_

STATE OF TEXAS
COUNTY OF HIDALGO

This instrument was acknowledged before me on this the _16th_ day of _January_, 1989, by _JOHN R. FREELAND, President_, of _Long Island Bridge Co., Inc._, a corporation, on behalf of said corporation.

Notary Public, State of Texas
Notary's name (printed):
_Maria Roa_
Notary's commission expires: _8-12-89_

STATE OF TEXAS
COUNTY OF _BEXAR_

This instrument was acknowledged before me on this the _23rd_ day of _February_, 1989, by _David W. Dillon, Executive Vice President_ of _Walzem Service Corporation_, a corporation, on behalf of said corporation.



Notary Public, State of Texas
Notary's name (printed):
Sherry A. Morahead
Notary's commission expires:  12-19-91

-10-

## SECURITY AGREEMENT

Date: January 27, 1989

Obligor: WALZEM SERVICE CORPORATION

Obligor's Mailing Address (including county): 900 E. Harrison,
Harlingen, Cameron County, Texas

Secured Party: JOHN R. FREELAND

Secured Party's Mailing Address (including county): P.O. Box
2586, McAllen, Hidalgo County, Texas 78502

Classification of Collateral: General intangible

Collateral (including all accessions): Fifty (50%) percent of
the "net profit" realized from the operation of the Outdoor
Resorts/South Padre Rental Office located on Long Island, Cameron
County, Texas. "Net profit" shall be defined as the total gross
rental income from site rental, trailer rental, and sea cottage
rental less the share of gross rental income paid to property
owners and the following expenses related to the operation of the
rental office:   administration, rental office general and
administration costs, and Home Owner Referral fee (ie. a 5% fee
paid to the Outdoor Resorts Home Owner's Association, Inc.).

Obligation

    Memorandum of Agreement

      Date: January 27, 1989

      Amount: TWO HUNDRED TWENTY-FIVE THOUSAND AND NO/100THS
      DOLLARS ($225,000.00)

      Obligor: WALZEM SERVICE CORPORATION

      Payee: JOHN R. FREELAND

      Terms of Payment (optional):   Principal is payable in
      quarterly installments.  The first installment is due
      and payable on or before April 15, 1989, and the others
      regularly and quarterly on or before the 15th day of
      July, August, January and April of each year until paid
      in full.  The amount of each payment shall be equal to
      fifty (50%) percent of the "net profit" realized from
      the operation of the Outdoor Resorts/South Padre Rental
      Office located on Long Island, Cameron County, Texas as
      that term is defined in the Agreement, being that one
      certain Agreement of even date herewith by and between
      JOHN R. FREELAND, LONG ISLAND BRIDGE CO., INC., and
      WALZEM SERVICE CORPORATION.

Obligor's Representation Concerning Location of Collateral
(optional):   At the Outdoor Resorts/South Padre Rental Office
located on Long Island, Cameron County, Texas

    Subject to the terms of this agreement, Obligor grants to
Secured Party a security interest in the collateral and all its
proceeds to secure payment and performance of Obligor's
obligation in this security agreement and all renewals and
extensions of any of the Obligation.

JRF-SECU.RE

Exhibit " B "

Obligor's Warranties

1.   Financing Statement.   To best of Obligor's knowledge, except for that in favor of Secured party, no financing statement covering the collateral is filed in any public office.

2.   Ownership.   Subject to the terms of the Agreement, Obligor owns the collateral and has the authority to grant this security interest.   To the best of Obligor's knowledge, ownership is free from any setoff, claim, restriction, lien, security interest, or encumbrance except this security interest and as set forth in the Agreement and in particular Paragraph 4e of the Agreement.

3.   Financial Information.   All information about projected income and expenses of the Outdoor Resorts/South Padre Rental Office provided to Secured Party was accurate to the best of Obligor's knowledge when submitted, as will be any information subsequently provided.

Obligor's Covenants

1.   Protection of Collateral.   Obligor will defend the collateral against all claims and demands adverse to Secured Party's interest in it and will keep it free from all liens and from all security interests except this one.   The collateral will remain in Obligor's possession or control at all times, except as otherwise provided in this agreement.   Obligor will take all reasonable prudent and business-like steps to minimize expenses and maximize income of the Outdoor Resorts/South Padre Rental Office.

2.   Secured Party's Costs.   Obligor will pay all expense incurred by Secured Party in obtaining, preserving, perfecting, defending, and enforcing this security interest or the collateral and in collecting or enforcing the agreement.   Expenses for which Obligor is liable include, but are not limited to, accounting fees, reasonable attorney's fees, and other legal expenses. These expenses will bear interest from the dates of payments at the rate of ten (10%) per annum, and Obligor will pay Secured Party these expenses and interest on demand at a time and place reasonably specified by Secured Party.   These expenses and interest will be part of the Obligation and will be recoverable as such in all respects.

3.   Additional Documents.   Obligor will sign any papers that Secured Party considers reasonably necessary to obtain, maintain, and perfect this security interest or to comply with any relevant law.

4.   Notice of Changes.   Obligor will immediately notify Secured Party of any material change in the collateral; change in Obligor's name, address, or location; change in any matter warranted or represented in this agreement; change that may affect this security interest; and any event of default.

5.   Sale.   Obligor will not sell, transfer, or encumber any of the collateral without the prior written consent of Secured Party.

6.   Audit.   Obligor shall annually and within sixty (60) days following the expiration of each calendar year provide Secured Party a certified independent audit of the receipts and disbursements of the Outdoor Resorts/South Padre Rental Office for the previous calendar year.

7.   Records of Collateral.   Obligor will maintain accurate business-like books and records covering the collateral showing all income and expenses of the rental office.

8.   Prudent Business Practices.   Obligor in good faith will

-2-

operate or cause to be operated said rental office in a prudent business-like manner so as to maximize net profits.

## Rights and Remedies of Secured Party

1. Generally, Secured Party may exercise the following rights and remedies either before or after default:

    a. each payment made towards the Obligation shall be accompanied by a copy of the information relied on by Obligor in making its calculation of net profit.

2. Audit. If Obligor fails to provide an audit as required by this agreement or otherwise by Secured Party, then Secured Party may obtain same and Obligor agrees to allow Secured Party and his representative unrestricted access to the books of the Outdoor Resorts/South Padre Rental Office for purposes of review and inspection. Obligor shall reimburse Secured Party on demand any and all costs incurred with such audit. Secured Party further has the right to conduct his own independent audit of the books at any time and should said audit reveal the audit of Obligor to be off more than fifteen (15%) percent in Secured Party's favor, Obligor shall reimburse Secured Party on demand for the cost of such audit; otherwise, such audit shall be at Secured Party's expense.

## Events of Default

Subject to the terms of the Agreement, each of the following conditions is an event of default:

1. if Obligor defaults in timely payment or performance of any obligation, covenant, or liability in any written agreement between Obligor and Secured Party or in any other transaction secured by this agreement;

2. if any warranty, covenant, or representation made to Secured Party by or on behalf of Obligor proves to have been knowingly false in any material respect when made;

3. if a receiver is appointed for Obligor or any of the collateral;

4. if the collateral is assigned for the benefit of creditors or, to the extent permitted by law, if bankruptcy or insolvency proceedings commence against or by any of these parties: Obligor; any partnership of which Obligor is a general partner; and any maker, drawer, acceptor, endorser, guarantor, surety, accommodation party, or other person liable on or for any part of the obligation;

5. if any financing statement representing a valid security interest regarding the collateral but not related to this security interest and not favoring Secured Party is filed;

6. if any lien attaches to any of the collateral;

7. if any of the collateral is lost, stolen, damaged, or destroyed, unless it is promptly replaced with collateral of like quality or restored to its former condition;

8. if Obligor fails to prepare and deliver to Secured Party a certified independent audit within sixty (60) days following the expiration of each calendar year of the income and expenses of Outdoor Resorts/South Padre Rental Office on Long Island for the previous calendar year.

-3-

## Remedies of Secured Party on Default

During the existence of any event of default, Secured Party may declare the unpaid principal of the Obligation immediately due in whole or part, enforce the Obligation, and exercise any rights and remedies granted by the Texas Uniform Commercial Code or by this agreement, including the following, providing the default continues after Secured Party has given Obligor fifteen (15) days' notice of default directed to Obligor's Mailing Address:

1.   require Obligor to deliver to Secured Party all books and records relating to the collateral;

2.   require Obligor to assemble the collateral and make it available to Secured Party at a place reasonably convenient to both parties;

3.   take possession of any of the collateral and for this purpose enter any premises where it is located if this can be done without breach of the peace;

4.   sell, lease, or otherwise dispose of any of the collateral in accord with the rights, remedies, and duties of a secured party under Chapters 2 and 9 of the Texas Uniform Commercial Code after giving notice as required by those chapters; unless the collateral threatens to decline speedily in value, is perishable, or would typically be sold on a recognized market, Secured Party will give Obligor reasonable notice of any public sale of the collateral or of a time after which it may be otherwise disposed of without further notice to Obligor; in this event, notice will be deemed reasonable if it is mailed, postage prepaid, to Obligor at the address specified in this agreement at least five (5) days before any public sale or five (5) days before the time when the collateral may be otherwise disposed of without further notice to Obligor;

5.   apply any proceeds from disposition of the collateral after default in the manner specified in Chapter 9 of the Texas Uniform Commercial Code, including payment of Secured Party's reasonable attorney's fees and court expenses; and

6.   if Obligor has failed to properly account to Secured Party for the net profits of the rental office, and if any disposition of the collateral fails to satisfy said default, to the extent (but only to the extent), of the improperly accounted for net profits, collect from Obligor such deficiency arising from such failure to account properly.

## General Provisions

1.   Parties Bound.   Secured Party's rights under this agreement shall inure to the benefit of its successors and assigns.   Assignment of any part of the obligation and delivery by Secured party of any part of the collateral will fully discharge Secured Party from responsibility for that part of the collateral.   If Obligor is more than one, all their representations, warranties, and agreements are joint and several.   Obligor's obligations under this agreement shall bind Obligor's personal representatives, successors, and assigns.

2.   Waiver.   Neither delay in exercise nor partial exercise of any of Secured Party's remedies or rights shall waive further exercise of those remedies or rights.   Secured Party's failure to exercise remedies or rights does not waive subsequent exercise of those remedies or rights.   Secured Party's waiver of any default does not waive further default.   Secured Party's waiver of any right in this agreement or of any default is binding only if it is in writing.   Secured Party may remedy any default without waiving it.

-4-

3.   **Reimbursement.**   If Obligor fails to perform any of Obligor's obligations, Secured Party may perform those obligations and be reimbursed by Obligor on demand at the place where the obligation is payable for any sums so paid, including attorney's fees, accounting fees, and other legal expenses, plus interest on those sums from the dates of payment at the rate of ten (10%) per annum for matured, unpaid amounts but in any event not to exceed the maximum amount allowed by law.   The sum to be reimbursed shall be secured by this security agreement.

4.   **Modifications.**   No provisions of this agreement shall be modified or limited except by written agreement.

5.   **Severability.**   The unenforceability of any provision of this agreement will not affect the enforceability or validity of any other provision.

6.   **Applicable Law.**   This agreement will be construed according to Texas laws.

7.   **Place of Performance.**   This agreement is to be performed in the county of Secured Party's mailing address.

8.   **Financing Statement.**   A carbon, photographic, or other reproduction of this agreement or any financing statement covering the collateral is sufficient as a finance statement.

9.   **Presumption of Truth and Validity.**   If the collateral is sold after default, recitals in the bill of sale or transfer will be prima facie evidence of their truth, and all prerequisites to the sale specified by this agreement and by the Texas Uniform Commercial Code will be presumed satisfied.

10.   **Singular and Plural.**   When the context requires, singular nouns and pronouns include the plural.

11.   **Priority of Security Interest.**   This security interest shall neither affect nor be affected by any other security for any of the obligation.   Neither extensions of any of the obligation nor releases of any of the collateral will affect the priority of validity of this security interest with references to any third person.

12.   **Cumulative Remedies.**   Foreclosure of this security interest by suit does not limit Secured Party's remedies, including the right to sell the collateral under the terms of this agreement.   All remedies of Secured Party may be exercised at the same or different times, and no remedy shall be a defense to any other.   Secured Party's rights and remedies include all those granted by law or otherwise, in addition to those specified in this agreement.

13.   **Agency.**   Obligor's appointment of Secured Party as Obligor's agent is coupled with an interest and will survive any disability of Obligor.

14.   Notwithstanding any other provision of the Agreement to the contrary, Secured Party acknowledges that Obligor is not personally liable for the Obligation and Secured Party's sole recourse in the event of any default under the Obligation, or any instrument, document, or other writing evidencing, securing or pertaining to the Obligation shall be to the Collateral, except to the extent otherwise set forth under "Remedies of Secured Party on Default" paragraph 6 hereof and paragraph 4d and 4e of that certain Memorandum of Agreement dated January 27, 1989 above described.

SECURED PARTY:                          OBLIGOR:

                                        WALZEM SERVICE CORPORATION


_____               BY: _____  EVP
  JOHN R. FREELAND